It's United States v. McMillan. When counsel gets situated, we'll be pleased to hear from you. The first attorney I have listed is Mr. McKenzie. Good to have you here with us today. I'd like to address the court on the issues of the denials, the judgments for the motions for a directed verdict, judgment of acquittal. Mr. Brown, I'd also like to address the issue of- That directed verdict down in South Carolina is only a civil term. That's the way it was when I was practicing law. And judgment of acquittal was a criminal term. Is that the way you all have it down there? No, we still call it directed. You call it directed verdict? That's fine. It all works. But anyway, Mr. Brown is going to address the issues of the unanimity of the jury verdict and the issue about the hearsay evidence about one of the victims' age. And then Mr. Enderlin is going to address the issue about cumulative error. Please, Mr. Court. This is an indictment out of the District of South Carolina that alleged conspiracy to commit sex trafficking and 29 counts, 29 substantive counts of sex trafficking. The dates of the indictment, 2014 through May of 2016, there were 10 co-defendants in the case. The first issue in the case is the denial of Defendant Miller's motion for a directed verdict or judgment of acquittal. I think, isn't it not denial of a motion, but the court's failure to sua sponte acquit? Because you failed to renew your motion? Okay. At the end of, at the close of the government's case, Mr. Miller definitely made a motion to, for judgment of acquittal on the conspiracy charge. At the close of all the evidence, it is unclear as to whether that motion was renewed. Attorney Murphy, who was representing Defendant Jackson, said to the district court judge, we renew all of our motions, motions in the plural. Now, honestly, I don't... You say that was made at the conclusion of all the evidence? Yes, sir, your honor. Now, honestly, I can't sit here and tell you I know that he was speaking on behalf of the other defendants and the other attorneys. Is that how it worked during the trial? Were they normally speaking for each other's motions or were they representing the individual defendants who they represented? I believe there were several instances throughout the transcript where Mr. Murphy did most of the talking and sometimes did talk on behalf of all three defendants. I believe that is in the transcript. Now, I mean, this is an issue that the government has raised in their brief about the waiver doctrine. You know, if you fail to renew your motion for judgment of acquittal at the end of all the evidence, does that mean you have waived your previous motion at the close of the government's case? I hope I'm not mistaken in saying this. It is my understanding that the Fourth Circuit has never actually held that. They have said that in an unpublished opinion, but I don't know that the Fourth Circuit has held that specifically. But at any rate, Miller did make a motion at the close of the government's case. Miller was only alleged to have conspired with one of the other co-defendants, that being Jackson. There were several co-defendants who testified during the trial cooperating for the government. All of them said, we don't know Mr. Miller. We don't know anything about him. There was some evidence that Mr. Miller knew Mr. Jackson, and the main evidence that the government produced to show that was sort of an unusual Facebook message exchange between Jackson and Miller. This Facebook exchange allegedly occurred while Jackson was incarcerated at the Charleston County Detention Center, so it's a little unusual. It was never explained how he was able to do that from a detention center. The government was alleging that Miller was trying to help Jackson get out of jail, help him get a bond so he could get out of jail. The only problem with that was he was being held without a bond. Now this occurred in September of 2014, and the exchange is very short, and I'd like to read it to you. This is the alleged exchange between Jackson and Miller. It's, Miller, if you out, holla at me. Jackson, no I ain't out. I'm locked up in Charleston, man, on Lee's Ave. Can you come down here? What page is that? This is on page 32-33 of our opening brief. Miller, I need your full name and I'll handle it from there. Miller, A-S-A-P, Jackson, Demon Jackson, Jackson, 3841 Lee's Ave., Jackson, Charleston, South Carolina, Miller, yah, Jackson, yo, Miller, got you. And that's it. That's the extent of the exchange. That is the extent of the evidence that was introduced by the government to prove conspiracy between Jackson and Miller. There was no other... I thought it was that there was evidence that their giving rides when you needed one to accomplish the purpose of your business. Operating the same time and place. Miller's inconsistent testimony about whether they knew each other. There was a little bit more, not a ton, but a little bit more. There was definitely evidence submitted that showed Miller and Jackson committed sex trafficking independently. But as far as conspiracy, the two of them working together, the way I read the transcript, that is the extent of the evidence of conspiracy. Now, I allege that's not evidence of anything illegal. Both of them later denied this anyway. And the government took it a step further and said not only is that evidence that... Why didn't y'all get some better instructions on the conspiracy charges? Why didn't you get some better instructions? Better instructions from the court? Yeah. Aren't you complaining about whether there should have been a multiple conspiracy instruction? Yes, sir. I'm getting to that argument. No, but did you offer the instructions you wanted now? Did you preserve the issue? Judge Kagan, no. You're up here on plain error. On that issue, yes, it is plain error. I mean, I don't think that's a frivolous issue at all. But it's not preserved. It was not properly preserved, Your Honor. We are here on plain error on that issue. I can't tell you otherwise. But, you know, the evidence of conspiracy between Miller and Jackson simply wasn't there. They also offered the evidence of one of the victims, Breonna Evans. She also never testified about any interaction between Miller and Jackson. She was alleged to have been trafficked by both of them, but she never said anything about an interaction between the two of them. Thank you. Mr. Brown? Good morning, Your Honors. I'm sorry to interrupt. May it please the Court. Jim Brown, Buford, South Carolina, on behalf of Mr. McMillan arguing Issues 3 and 4 primarily, on behalf of all three defendants, as they apply slightly differently. I'd like to first point out, addressing the plain error issue, which does seem to be the biggest hurdle that we have, except for Mr. Miller's claim on the directed verdict. And if I may just point out that as to Issue 3, we believe that the principles are plain enough, which is what is required. We know that elements have to be proven. Every element does. And the jury has to be unanimous as to those elements. We also know that if there's a chance of jury fusion, that an instruction regarding specific unanimity is required. There's not a case cited that says otherwise. And so those are general principles. In the fact that there is no specific case addressing it, the dearth of cases regarding whether or not a sex trafficking conspiracy under 1594 would require that same rule, but there's no reason to accept it from it, because there's no case that does that. And certainly under like 371, there can be a conspiracy regarding any of the myriad of tens of thousands of laws out there. And we know under all of those cases, that if there's a risk of jury confusion, that there should be a unanimous, specific unanimity instruction regarding the objects of the conspiracy. And we believe that applies here. And while we will say primarily the issue we've addressed regards whether it's trafficking by force or trafficking of a minor, we would also assert that there's potentially two other sets of statutory provisions that are criminal within the statute itself, whether it's trafficking by recruitment, et cetera, or trafficking by benefit. And actually the Flanders case, out of another circuit, actually finds that those are also separate offenses. So significantly, we could have four different objects charged in that count one, and later on count 10, as I get at. And so we believe that is clear, that if there's jury confusion, that would be required. With respect to this issue of the separate objects of the conspiracy, how could it be plain error if in fact you can see that there's no precedent going either way on that issue? There's no precedent applying it to that specific fact. Right. So then how could it possibly be plain for the court to not sui sponte, give an instruction to the jury to that effect? Just like the hearsay issue I cited in issue four here, the rules are plain. You can't have an out-of-court statement made by a declarant who's not testifying. And then it gets applied to a set of facts. And having the pleasure yesterday to see the en banc panel, I believe that Judge Motz mentioned when in a parlay with the Attorney General or U.S. Attorney in that case, indicated there's never a case that's exactly on fours factually with any other. Well, but is it the general rule that a court must in most contexts channel the jury's discretion in a way that they specify what the object of the conspiracy is? Or is it to the contrary that a jury, you know, juror A can find object one, juror B can find object two, but that doesn't matter so long as they all agree unanimously that the defendant committed an object of the conspiracy. My understanding of the law, without exception, is that not in the sex trafficking 1594, but in every other context, they had to be unanimous at least as to one object. And those are the cases essentially cited by the appellee in this case right here. But they all stand for the same proposition that there still has to be unanimity as to one object. The same object. To the same object. Yes, sir. You're right. Okay. And we don't believe that. We believe that's playing. And if I may continue in this case, they were charged in the indictment with the conjunctive and then they're charged to the jury or and that's the instruction you didn't ask for. There's no question that there's a want of some request for instructions in this case. And we believe to go back to issue two, the judge doesn't have to do that for you. You are supposed to do it yourself. I mean, you're representing your client. He doesn't have to. The judge doesn't have to represent. That's correct, Your Honor. And with due respect, none of the three of us represented the three people below. We did not raise any twenty to fifty five type issues. We would if the court believes that that's where the opinion should go. Maybe that would offer relief to our clients down the road. But we would suggest that that is also somewhat related to the multiple conspiracy issue as well. While maybe there should be a direct verdict, maybe there should have been a multiple conspiracy instruction. And that is evidence of the confusion that could arise in this case, especially because Mr. Miller is never charged with any offense of trafficking of a minor. And Mr. Jackson and Mr. McMillan are. And to briefly go into that before I run out of time on issue ten, the government agreed, conceded that there were two offenses charged in count ten. Excuse me, issue four. On count ten for my client, there were two distinct criminal charges brought. That count ten was multiplicitous? It was duplicitous, Your Honor. Duplicitous. Yes, sir. And they did give a special interrogatory as well, I'm going to couch it, because there is a case, United States v. Paul, that cited Did they use the word or in it? He did use the word or in the charge. That sometimes telegraphs duplicity. It might have helped you a little bit. And I did point out in the brief that they used or also in the count one conspiracy. And what's interesting about that, to go back and briefly to the count one, the judge does not refer, because the appellee has said, look, 1594 only requires that you conspire to violate 1591 in some way. But the judge never refers to 1591. So all the jury hears as lay people is that you have to see whether they agree to commit crime A, the judge's words there, or crime B. And that is in our joint appendix, if I may point that out. And he refers to that multiple times. That's at joint appendix 1017 and 1022. He never refers to 1591. And weren't they, they were all convicted of the force offense, right? Of the force version. Yes, they were, your honor. So we're looking at prejudice. Can we look at that and say, seems like the jury agreed that if they had to pick, I'm not saying they have to break 1591 down that way, but that if they did, they found that they all conspired to commit by force? And briefly, if I may on that, there's still this confusing issue of what Miller did to be involved at all. Because if it's not a conspiracy with the three of them, it's not the conspiracy. In theory, they did not conspire as alleged, as in Mr. Miller's not in it. That should be not guilty for all three on that one. And so we believe the fact that there's so many moving parts with these chances of even a majority vote, but not a unanimous vote as to the object of the conspiracy, or in count 10, to the question of whether or not it was force or minor. And I would just, before I end, indicate on that one, if they would have had a split decision, there was no way for them to resolve whether it was guilt or not guilt. And so he even says something about, don't sacrifice your verdict for the sake of unanimity, which is a very confusing statement from the judge there. And U.S. versus Paul, they cite, and I know I'm running out of time, U.S. versus Paul says- U.S. versus Paul indicates, in their case, that just having those findings is enough. But in that case, he splits the count, the judge and Paul, splits the count down to the crime of trafficking by force or the crime of trafficking of a minor. And if I may just take a minute to address the hearsay issue, there are only three ways that the age can be proven. It's the testimony of a person with actual knowledge, which includes the person's own age. And that actually is the case in the astrew opinion, which is within this circuit, it's a district court opinion. The other way would be through the public records, which was not done in this case. And then the third one would be expert witness. There's none of that. Given that fact a priori, there cannot have been any other way that these witnesses testified except for it being hearsay. But we don't know, right? Because you didn't object. And so they didn't, wasn't challenged. Maybe they could have pulled a public record, but you didn't object. Well, like Alfred Whitehead, the philosopher says, you know what's on one side of the coin by knowing what's on the other side of the coin. And we know that Carnes and Benton were not there at her birth. And Currie says how he got it. But this is another plain error issue. It absolutely is. But again, the issue is, is it hearsay? Is there an exception? Did they have a chance to cross-examine the declarant? Wasn't there a photograph submitted to the jury that a jury could rely on to prove age? There was a Facebook photograph. The Fosberg case that's cited in this opinion actually allows that to serve as the basis of child pornography. That is a nude photograph of a 14-year-old. This girl was 16 and actually 17 at the time of trial. And so we believe that that alone is a difference. And she's not nude in the Facebook photo. And so we believe that that is a difference. Also in the Fosberg case that does affirm based on photos, they also affirm because there is other evidence of minors, other minors. And we believe in conclusion that those three issues loop together, that we have the hearsay issue regarding the admission of the age, that that in turn can affect whether or not the object of the conspiracy needs to be unanimous. And that in turn goes back to whether there's multiple conspiracies. We believe those three loop together very tightly to show that it's hard to stick the needle through all of the parts of the whole. But in this case, these errors overlap such that it is erroneous to have the verdict to rest on the conduct that we've got in this court with the jury left to fill in the gaps. Because we do agree that there is sufficient evidence to convict some of these people of some things. And at the end of the day, there was a lot for them to digest with very little instruction on the actual. I've been very generous with you. Let's hear from Mr. Enderlin. Thank you so much. Yes, sir. May it please the court. Excuse me, Derek Enderlin for Mr. Jackson. 30 minutes ago, I was just thinking about how long these arguments seem when you're sitting on the benches back there and how short they are at the podium. I'm arguing the cumulative error. And I want to go back to part of the directed verdict on the conspirator charge and the it's pretty similar regardless. The standard is any evidence whatsoever. And if Miller's case is thrown out, it seems to be... Now the cumulative error, does that apply to everybody? All three? The cumulative error applies to everybody and also... So that applies to everybody. And also includes all arguments. And were there any anything preserved in the cumulative error or is it all plain error? I think certainly the vast majority of it is plain error. And that's why I was going back to directed verdict standard for Mr. Miller. Again, if it's what we call directed verdict, if it's any evidence whatsoever, it seems to me whether it's plain error or not, there's not a lot of leeway there. Is there any evidence at all? And to your question of, I think there were car rides. There was no evidence that those car rides had anything to do with prostitution. The only two things other than that were the Facebook messaging and the fact that Mr. Jackson stole Brianna Evans from Miller. But again, her testimony essentially said that there was no connection between Jackson and Miller in that regard or anything else. But my argument mainly focuses on improper statements and inflammatory language. In the government's response, they repeatedly said that there was nothing unusual or inflammatory in these statements, nothing improper, and instead suggested that the appellants were parsing the government's argument for minor infelicities. And so I think in some ways, this court has some easy questions to answer. Is it an objective summary of the evidence to twice tell the jury that the six co-defendants would testify that all three of these defendants routinely raped young women? Was it appropriate for the prosecutor to repeatedly say he wasn't calling other victims to this case because they'd be too traumatized? He wasn't calling victims to the case because the jury would be traumatized? And it suggested that there were more victims out there, more people out there willing to testify that the prosecutor knew about this evidence, but he wasn't bringing it for the jury. And the question is, is that appropriate for a prosecutor to do? In the end, only one victim that was in the indictments, Breanna Evans, actually testified in this case. I think another question... Isn't the question, the proper question, whether there was plain error for the district court not to intervene? Yes, at that stage, because there was no objection to those statements. Well, was it? I think it was plain error. I think there are some things that the prosecutor can't do. Again, vouching for witnesses, especially saying essentially that there are other victims out there that are not going to testify. That moves right into what he said about Breanna Evans. I believe Breanna Evans. I don't think she would lie about that. So you're saying the court should help represent the defendants? I'm not saying the court should represent, but obviously they have to be some gateway. And I think one of the things that I consistently think about is during opening statements, during closing arguments, the defense attorney is supposed to be listening to these statements, asking himself whether it's legal to object, asking himself whether it will draw more attention to the statement than not and not be helpful, asking himself what is the actual legal basis of the objection. And all at the same time, he's supposed to be listening to the other things the prosecutor is saying at that point in time. And I think there's also got to be some burden on the prosecutor not to say things like that. And I think a lot of this stuff is 101 law school. You don't stand up and say, I believe the victim in this case. I don't think she would lie. And I think that's a lot of that. I mean, you make a good point, right? A lot of that is the defense counsel making a judgment call. Do I want to stand up and object to the prosecutor saying that the victim should be believed? Or am I going to let that go because I don't want to draw attention to it? I don't want to look like a bully. It's easy to make that judgment call and then come up here on appeal and say, well, the judge should have intervened. All of that was wrong. When at the time, it was a legitimate defense judgment call. I think in this case, it seems clear the attorneys weren't making a lot of judgment calls. There seems to be a lot of things that were said in this case that were objectionable, should have been objected to. I can't really imagine something worse than standing up and saying these defendants were routinely raping young women. I mean, again, it goes back to this Miller thing where, again, the government repeatedly in its brief is saying this Facebook message stands for Miller trying to get Jackson out of jail and them trying to assist in Breanna Evans not testifying. And the prosecutor actually said repeatedly they were covering their tracks trying to make Breanna Evans disappear. So not only do we have that he's arguing they're routine rapers, essentially serial rapers, it seems he's arguing that they are kidnappers and or murderers in the sense of Breanna. And there is just nothing in that Facebook message that could remotely go there. That seems to be beyond the pale. And I don't know why these defense attorneys missed that stuff. I don't know why they missed the countless pitting. Again, most of this stuff is in our brief. The pitting was just absolutely amazing how much it contained. There seems to be at some point in time no way you can say that that was simply a judgment call to let them continue to do that. Mr. Miller actually, was accused of lying and made to apologize to the jury. I cannot see how that's not law school one on one that judge at some point in time we've got to object. So I don't know that there are strategic decisions here. This seems to be plain. Were the lawyers afraid of the judge? I have no idea, your honor. I mean, I wasn't there. I didn't talk. Well, I'm asking you the only one we got here to ask right now. I don't know. But I just don't know why they didn't object when they did. Well, the old judge can do is overrule you, I guess. I mean, he can overrule you. And most of them won't put you in jail for objecting. It was interesting, your honor. I mean, there are some times where I think Mr. Murphy objected to or asked about a closing a charge. And the judge immediately cut him off, said, No, we're not going there. I don't know why. I can't tell you what they did. I can tell you they didn't do. They didn't object. They didn't put these out there. I think they are in our brief. I don't think there's a whole lot of reason to believe it. Thank you. Thank you, Mr. Anderlin. Ms. Baldwin. Thank you, your honor. And may it please the court, Anna Baldwin for the United States. As the court is recognized in a lot of the prior questions, all of the issues that are being raised here are in fact being raised on plain error because they weren't preserved below. And as we've argued in our brief, there's no showing on any of these legal issues that there is, you know, binding circuit precedent. To the contrary, we don't believe that there's error, but I'd like to focus on prosecutors aren't supposed to get up and give their personal opinions. Are there? No, your honor. And, you know, if the question is about the, I believe they ought to know better. Certainly, your honor. And if the issue is about the, I believe Brianna's statement, um, viewed in context, that statement is, you know, going through what, what makes a vouching a problem is when a prosecutor is saying, I have personal outside of the record knowledge that uniquely makes me qualified to tell you that this is a credible witness. And that's not what happened with that statement. That statement, if you, in the transcript, it's going through exactly what the record evidence is and is saying, essentially, Brianna Evans is a credible witness. Would it have been much better practice to say, based on this evidence, Brianna is credible? Yes. But in the slip of the tongue, you know, I'm sure I'll sit down and wish I had said things differently. That's not the kind of plain error that was so prejudicial. And it's a really isolated statement. And again, it's not pointing to any kind of extra record evidence. On the overall issue of a lot of the plain error arguments here are about the conspiracy charge. So before getting into exactly why there's no legal error with any of those, I think it's important. This was a pretty thin conspiracy charge. So on the Cory Miller, on the, I think it's helpful Judge King to look at it in sort of two buckets. It's not a thin conspiracy charge at all as to the breadth of the conspiracy overall as to all of the conspirators. And I think there's also sufficient evidence as to what the government's evidence showed as to the overall conspiracy it showed. And again, the jury was instructed here that what the government had to prove was a mutual understanding between the cooperators to cooperate, to accomplish an unlawful act. That's the unobjected to jury instruction at JA 1024. And the overwhelming evidence of that, you have testimony between conspirators that they're teaching one another how to traffic testimony between the conspirators and you have five who testified that they have the same sort of rules about how the women can and can interact with one another and with other traffickers. Does that testimony sort of tie all of these people together or does it suggest one more than one conspiracy? The evidence overall, you know, it's certainly the case that there wasn't evidence saying all of these traffickers know and work with one another, but that's not the standard. You know, we cite from the Johnson case and the Banks case, you don't have to know every person in a conspiracy and there can be major players and minor players, but you know, you have, there's some implication in the briefs, even though it's never really argued directly that the defendant's position is that maybe, you know, there's a separate group of three traffickers and this, you know, and then the traffickers who are on trial here, but, you know, I mean, even Deshaun Curry, who they seem to imply is a different group, there's evidence that he gave one of Bakari McMillan, that he gave her a ride, one of her victims to a train station. There's plenty of evidence that they're cooperating. You have evidence that when some of these folks, again, Mr. McMillan didn't have money for a hotel room, that one of the other conspirators actually gave him a hotel room out of which he trafficked women. And you have the evidence that after, and this goes and helps to put into perspective, I think, the Facebook messages for Mr. Miller, you have evidence that once Mr. Jackson is arrested, that he is reaching out either to conspirators who are also in the jail with him or and conspirators who are outside the jail to reach out to victims. So there's testimony at JA 283 and 313 that Jackson had communications with Mr. Singletary about trying to silence Lindsay Wentz and keep her away from law enforcement. And there's testimony that Mr. Jackson had communications with Tramell Black about trying to keep Bethany Haney away from law enforcement. So that is certainly strong evidence of a conspiracy. And importantly, that is evidence that puts in context the government's evidence about those Facebook messages. So, you know, there's certainly record testimony that Mr. Jackson didn't have a bond. So, you know, I don't know why he's reaching out to have Mr. Miller come and visit him into the jail. I think the inferences that the jury could have drawn are, is this a social visit between the traffickers? Or they can look at the other evidence that's present in the record and say, no, what this evidence shows is that, you know, he's reaching out just in the same way that he reached out to Mr. Singletary. Ms. Baldwin, this may be a difficult question because obviously when you look at a conspiracy, you don't take any single piece of evidence in isolation, but consider all of what transpired and all of the evidence in the record, and you've gone over some of that. But can you point to one, if there is, one piece of evidence that is sort of strongest in your view to show that this was a single conspiracy as opposed to two separate conspiracies? Is there any way to, do you have, can? I mean, Your Honor, the, it seems that in some of this court's prior standards, the standard for a rocket decision, do you have the same objective, the same goal, the same nature, the same geographic spread, the same results? I mean, you can see, I hope you can see that there may be two separate groups who have the same overarching goal of engaging in sex trafficking, and that can't by itself be enough to convict those two separate, otherwise separate groups of a single conspiracy, right? Certainly, Your Honor. But, you know, I think the, the argument that was really being put forward at trial, and, you know, perhaps it's evolved, and it's still not even, as I read the defendant's brief, being clearly argued that there are two separate groups. I think that's an implication that you can read between the lines, but the defendant's argument has always been that they were independent operators. And really, the multiple conspiracy instruction, in the way that we understand the defendant's argument, is really going to a sufficiency argument, that there wasn't sufficient evidence to prove any conspiracy. You know, if the, if the point was that there were multiple conspiracies, they could have asked for that instruction. They didn't ask for that instruction, and the instruction that the court gave, you know, allowed the jury to say, was there a conspiracy here at all? And you have plenty of evidence, again, of the sharing of rides, of, you know, the trading of women between the groups of conspiracies. You know, there's literally record evidence of women being sold and transferred between the traffickers. There is plenty of evidence for a single conspiracy, and they didn't request a multiple conspiracy instruction. And we're not aware of a case where you have a reversal on plain error, where you haven't requested that kind of instruction. And here, there is overwhelming evidence to show that there was a single conspiracy, and we think that evidence as to Mr. Miller is plenty of evidence, especially viewing those Facebook posts. You used the word cooperating there. Do you use that equivalent to conspiring? Your Honor, I, the word cooperating, I use because that was the word that the jury was instructed on it, J.A. That's what I'm asking, is cooperating, was it used in the context of conspiring and agreeing together? Yes, that it was confederating. So it's cooperating for the purpose of this trial is the same as a conspiracy? It's a mutual understanding to cooperate for the purpose of achieving an unlawful goal. Yes, sir, Your Honor, but it's the, I don't think it's just the cooperation, it's the mutual understanding which can be explicit or tacit. That's not in the statute, was that an indictment? Cooperating is equivalent to conspiring? That's normally, I don't know that I've seen that before. I've seen a lot of conspiracy charges. Sure, Your Honor. But you're cooperators as the witnesses. Sure. You've got cooperating witnesses coming in and helping their government out, but usually for conspirators, you call them co-conspirators, and they conspire, confederate, agree together with each other to commit offenses against the United States. That's what they're charged with, and you have to prove it. Correct, Your Honor, and I think, again, it's the combination with the mutual understanding and, you know, only pointing out that jury instruction because that is something that guided the jury and even to this day in the briefing is something that the defense hasn't objected to as setting too low a bar. If I could, I'd like to address the unanimity and the elements issues as between the trafficking conspiracy under the 1594 C charge and the 1591, and I think one thing that's helpful to make clear is that the conspiracy charge, the government, of course, agrees that the jury has to be unanimous as to the elements of the crime, and the jury was so instructed here. The element that's relevant here as to a 1594 C conspiracy charge is to violate section 1591 to commit sex trafficking, which, as the sex trafficking statute is captioned, can be done either through force, fraud, or coercion or trafficking of a minor. For purposes of a 1594 conspiracy conviction, those are means. Now, if you're talking in terms of the substantive trafficking offense under 1591, of course, those are elements under the actual trafficking substantive offense. They carry different statutory sentencing consequences, but in the context of the conspiracy charge, it's the government's argument that those would be alternative means, and this is a novel issue. Again, there's, we don't believe it could possibly be plain error. There's no case law that says this is exactly how you have to instruct a 1594 conspiracy charge, that it has to have specific unanimity as to a minor or as to the force, fraud, or coercion, but the court can be confident here that there was no prejudice to the defendants given that all of these defendants were convicted based on overwhelming evidence of substantive force, fraud, and coercion offenses, so there's no reason to believe that the jury would have been confused as to the lack of a specific unanimity requirement or would have reached a different verdict, which is the showing that defendants would have to make to show that they had been substantially prejudiced. Just briefly, on the age hearsay issue, again, it matters that this issue is being brought up on plain error. There are three witnesses whose testimony they're objecting to is the basis of hearsay. For the reasons we've explained in our brief, we don't believe that any of those statements were hearsay, but the idea that the government hasn't proved SP's age is not the case. There was testimony that we believe is not hearsay testimony, and again, I think it's important to keep in mind what the substantive standard as to that element is. The government didn't have to prove that these defendants knew or disregarded SP's age. Under 1591C, the government only had to prove that there was a reasonable opportunity to observe SP's age, and there's testimony in spades that the defendants who have the substantive trafficking convictions as to SP, Mr. Jackson, had a sexual relationship with her. Mr. McMillan was spending time with her in hotel rooms. There's no question that they had that reasonable opportunity to observe. So if the issue is just some hypothetical, we don't really know that SP is a minor, again, if there had been any objection that that wasn't actually a proven fact, and if defendants had objected in real time, the government certainly could have put on further documentary evidence. They didn't object to that, and there's no chance that it's plain error. So if there are no further questions, we would ask the court to affirm these convictions. Thank you, Ms. Baldwin. All right, you fellas, save some rebuttal time. Mr. McKenzie? Thank you, Your Honor. Just briefly, Judge Diaz, you mentioned the testimony and the evidence about the similar techniques and methods. One thing I want to say about that, the government called Special Agent James Hardy of the FBI, had him qualified as an expert witness in sex trafficking techniques and procedures and things like that. If you look at what common trace, if you look at, he talked about, you know, violence, the terminology they use, how they use the internet, rules they had with their girls, use of drugs, all kinds of similar methods and techniques. But if you look at what his testimony is, what he's saying is these are common techniques and methods used by sex traffickers throughout the United States, nationwide. He wasn't saying that these are common, these are traits or techniques that are peculiar to this conspiracy, although, you know, this evidence was offered for the purpose of proving that these defendants were in this conspiracy. That's not really what it was. It was proof of techniques throughout the United States used by all sex traffickers. And then also on the multiple versus single conspiracy issue, I ask that you look at the timeline. We included a timeline in our brief. You have different defendants working in the alleged conspiracy at different times. You've got substantive counts in the indictment that fall some three years outside of the alleged time frame of the conspiracy. The conspiracy had different subsets, different defendants working with other defendants. Singleton knew Jackson but not McMillan or Miller. The testimony established this. Taylor, Curry, and Parker did not work with Jackson or McMillan. Parker only associated with Curry and Taylor. Curley worked with Taylor and Parker but not Jackson and McMillan, although he knew them. Jackson and McMillan knew each other. Jackson and Miller knew each other but did not work together. Thank you, Your Honor. Thank you, sir. Mr. Brown? I'd like to briefly go back to something going in reverse reply to the Appleby's argument, and I want to talk a second about the age. We're not raising an issue with whether or not they had a reasonable opportunity to observe SP. What we're saying, and we are saying it, there is no confident or admissible evidence that she was a minor, and we've heard it. And I will say this, it required almost no more effort for the agent who looked at the birth because we've got cars and bit and both to talk about reviewing some other independent source to just get a certified copy and admit it under the hearsay exception. That's it. A ruling today does not create some kind of floodgate of problems for these prosecutions. It requires that little bit extra effort to go down to the health department and get a certified copy of it. That's it. We assume, and we'll say this, that the independent source Carnes talks about is the birth certificate. I mean, what else would there be besides actual people who are either in the family tradition, mother, father, or the young lady herself, or the doctor, I guess. Not only be the other independent sources. And so we want to make clear it's not that we're arguing that hearsay involved the ability for them to see her. Back to the 1591, unanimous as to the elements on a 1591 conspiracy. Now, when we talk about the object here, the judge did not charge ever that they could convict under 1594, count one, for them violating 1591 as a whole. He never says conspiracy to sex traffic, which is the other way that the appellee couched it. He says you have to decide whether or not they entered an agreement to commit the crime of A, and then he gives a description, or the crime of B. And he changes it to the disjunct. And he gives it as these two choices. And so it's not couched, and maybe that's erroneous, but if that is erroneously charged, that actually furthers the need in this case to have a specific unanimity instruction as to count one. As to specific unanimity of the object, we also believe that that is kind of the subset of instructions that would be also related to the multiple conspiracy. If it's not that conspiracy, if there are multiple smaller conspiracies, it's not guilty. But let's go a bit further. Your Honor, or persons of the jury, what the judge could have told them is, consider whether there's multiple conspiracies instead of one. You only have to have sufficient evidence, sufficient to support that finding, to get that instruction. And then on the other hand, when you do so, consider being unanimous on the object. And we believe that given those two together, and the lack of competent proof on age, that this should be reversed to all three as to count one, to Mr. Jackson as to count three, and Mr. McMillan as to count two. Thank you. Thank you, Mr. Brown. Mr. Anderson? May it please the court. Clearly, our big argument, one of our big arguments is Miller was not in a conspiracy with anyone. And the danger of conspiracies is right before you, that the government spent 99% of its talk about what happened in this conspiracy talking about other people. And then they said, well, see, Miller gave Jackson a couple of car rides, so he must be in this conspiracy. Well, Jackson talked to other people about not having witnesses show up. Therefore, when Miller talks to Jackson, he must be talking about making Brianna disappear. That's the danger of a conspiracy. There's no real proof there. That Facebook messaging cannot mean anything. It could mean that they were planning to get married next weekend. It could mean they were planning to open an ice cream parlor together. But it has nothing in there regarding this Miller's not in this conspiracy. The evidence that he raped Brianna Evans, all of that prejudicial information goes to everyone in the conspiracy, especially considering these charges under Pinkerton that all their acts could be considered together. That is the danger that Cocuticus or Coticus warned us about 75 years ago. It's the road to totalitarian institutions where you just simply push everybody in a group and say they must be involved because they gave someone a car ride or because they were talking to each other. In regards to the supposed misstatement about I believe Brianna, there are too many misstatements from the prosecutor in this case. Twice again, he alleged that these defendants, all three, routinely raped young women. Four times he kept saying they're covering their tracks, that Jackson and Miller were covering their tracks, making Brianna disappear. At some point in time, there are too many instances that were improper, inflammatory, and poisoned the mind of the jury, and it's just too much. Unless there are any other questions, I don't have anything else. Thank you, Your Honor. Thank you very much, sir. We'll come down to Greek Council and take a short break. This honorable court will take a brief recess.
judges: Robert B. King, Albert Diaz, Allison J. Rushing